**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                      MASTER FILE NO. 12-md-02311

_____

In Re: Heater Control Panel Cases         HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:                 2:12-cv-00401

Direct Purchaser Actions
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO AMEND COURT'S
APRIL 30, 2014 OPINION AND ORDER TO PERMIT INTERLOCUTORY APPEAL**

Before the Court is Defendants' request that the Court amend its April 30, 2014 Opinion and Order, which denied Defendants' collective motion to dismiss the Direct Purchaser Plaintiffs' (DPPs) complaint, and to permit interlocutory appeal of the decision under 28 U.S.C. § 1292(b). (Doc. No. 83). The Court has reviewed all the relevant filings and finds oral argument will not aid in the resolution of this dispute. See E. D. Mich. LR 7.1(f)(2). For the reasons that follow, the motion is **DENIED**.

**I. PROCEDURAL BACKGROUND**

The Court denied Defendants' collective motion to dismiss the DPPs' complaint because, viewed in the light most favorable to DPPs, the complaint included "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007). According to the complaint (Doc. No. 45 at ¶ 1), Defendants, Denso Corporation, Denso International America, (collectively "Denso") Sumitomo Electric Industries, Ltd., Sumitomo Electric Wiring Systems, Inc., Sumitomo Wiring Systems, Ltd, (collectively "Sumitomo") Tokai Rika Co., Ltd, and Tram, Inc. (collectively "Tokai Rika"), manufactured or sold Heater Control Panels ("HCPs") in the United States. DPPs allege that they were injured by a conspiracy among Defendants to fix prices on HCPs. According to DPPs, Defendants met and discussed bids and price quotations for HCPs sold in the United States, (Doc. No. 45 at ¶¶ 53, 54), agreed to coordinate price adjustments requested by Original Equipment Manufacturers ("OEMs") in the United States (Doc. No. 45 at ¶ 55), and manipulated the Request for Quotation ("RFQ") process. DPPs also allege that Defendants control a majority of the HCP market, (Doc. No. 45 at ¶ 44), which contains significant barriers to entry: significant start-up capital expenditures; inelastic pricing, and a lack of viable substitute products. (Doc. No. 45 at ¶¶ 45-46).

In addition, DPPs allege that Sumitomo and Denso have histories of collusion and have been involved in antitrust investigations with respect to other automotive parts (Id. at ¶¶ 47-50). Denso and two of its employees pleaded guilty to rigging bids and fixing prices on HCPs sold to "an automobile manufacturer." (Doc. No. 45 at ¶ 79, 84-86). The employees pleading guilty worked in Toyota Sales Division. (Doc. No. 45 at ¶ 85-86). Tokai Rika also pleaded guilty to the same conspiracy relative to Toyota. (Doc. No. 45 at ¶ 89). The price-fixing is alleged to have impacted multiple bids submitted to Original Equipment Manufacturers ("OEMs") as well as the prices paid by all direct purchasers. (Doc. No. 45 at ¶ 72).

## II.  STANDARD OF REVIEW

At the outset, the Court observes that interlocutory appeals in the federal system generally are disfavored.  <u>Firestone Tire & Rubber Co. v. Risjord</u>, 449 U.S. 368 (1981). "Routine resort to § 1292(b) requests would hardly comport with Congress' design to reserve interlocutory review for 'exceptional' cases while generally retaining for the federal courts a firm final judgment rule."  <u>Caterpillar v. Lewis</u>, 519 U.S. 61, 74 (1996). Accordingly, a party seeking an interlocutory appeal has the burden of showing exceptional circumstances exist warranting an interlocutory appeal.  <u>W. Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis (In re City of Memphis)</u>, 293 F.3d 345, 350 (6th Cir. 2002); <u>Vitols v. Citizens Banking Co.</u>, 984 F.2d 168, 170 (6th Cir. 1993).

> Under the statute:
>
> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C.A. § 1292(b) (West 2006).

### III. ANALYSIS

In support of their motion, Defendants assert that the order denying their motion for dismissal presents a controlling question of law for which there is substantial ground for difference of opinion and for which an immediate appeal may materially advance the ultimate termination of this litigation. Specifically, Defendants assert that interlocutory appeal meets the first prong of the test because there is a basis for disagreement as to the sufficiency of the allegations in the complaint. The Court agrees that the application of the pleading standard to DPPs' complaint involves a controlling question of law because the Sixth Circuit has held that "[m]ixed questions of fact and law are treated as questions of law for purposes of an interlocutory appeal." Flint v. Ky. Dept. of Corr., 270 F.3d 340, 346 (6th Cir. 2001) (citing Williams v. Mehra, 186 F.3d 685, 690 (6th Cir.1999)). The Court also agrees that Defendants have satisfied the third requirement under § 1292(b)--an immediate appeal from the order may materially advance the ultimate termination of the litigation. The moving party meets this requirement when the resolution of a controlling legal question not only may avoid trial, but also when the resolution would "otherwise substantially shorten the litigation." The Clark Constr. Group, Inc. v. Allglass Sys., Inc., No. Civ. A. DKC 2002-1590, 2005 WL 736606, at *4 (D. Md. March 30, 2005) (citing 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3930, at 432 (2nd ed.1996)).
DPPs concede that the case would be narrowed substantially in terms of discovery should Defendants prevail on appeal, and the Court finds the third requirement is met.

The outcome as to the middle requirement, however, does not favor an immediate appeal. In the Sixth Circuit, the district courts have interpreted the

4

"substantial ground for difference of opinion. . .regarding the correctness of the decision" as meaning "(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." In re Miedzianowski, 13-101, 2013 WL 4436545 (6th Cir. Aug. 20, 2013) (citing City of Dearborn v. Comcast of Mich. III, Inc., No. 08-10156, 2008 WL 5084203, at *3 (E. D. Mich. Nov.24, 2008).

In this case, Defendants assert that the previous decisions have not provided substantial guidance because the Sixth Circuit has not addressed the particular allegations presented in DPPs' complaint. Eagan v. CSX Transport., Inc., 294 F. Supp. 2d 911, 916 (E. D. Mich. 2003). Defendants formulate the issue that should be certified for appeal as whether a plaintiff that "combine[s] allegations regarding a price-fixing prosecution resulting in narrow guilty pleas and government statements detailing specific, targeted conduct with conclusory allegations regarding general industry conditions" has stated "a claim for a substantially broader conspiracy than the government charged, without pleading any facts suggesting a broader conspiracy." (Doc. No. 93 at 1). The Court disagrees not only with the characterization of the complaint, but with Defendants' position that the appeal meets the second criteria for interlocutory appeal. Accordingly, the Court directs its attention to whether there is substantial ground for difference of opinion with the Court's conclusion that the allegations in the complaint satisfied DPPs' pleading burden.

In contrast to the allegations before the Supreme Court in Twombly, 550 U.S. 549 (a complaint alleging parallel conduct that did not suggest "a context that raise[d] a suggestion of a preceding agreement"), here, there is no uncertainty about the existence of an agreement.  In their plea agreements, Denso, its executives, and Tokai Rika admit they coordinated price quotes for HCPs in response to certain RFQs issued by Toyota, on a model-by-model basis.  In addition, Tokai Rica pleaded guilty to obstruction of justice in that it destroyed electronic data and paper documents "likely to contain evidence of antitrust crimes in the United States and elsewhere." (Doc. No. 45 at ¶ 88).  Defendants assert these pleas cannot be stretched to support allegations of targets other than Toyota, and the DPPs have overreached in that the factual allegations do not support the existence of a conspiracy beyond limited models manufactured by Toyota

Under the governing standard, the Court was tasked with the duty to consider whether the content of the guilty pleas combined with other allegations in the complaint allege a conspiracy that extended beyond Toyota plausible.  A review of the factual allegations and the inferences favorable to DPPs, which must be drawn by the Court, distinguish this case from those relied upon by Defendants to support the need for interlocutory appeal.  The Court finds that if ever a case presented "the 'larger picture' from which inferences of a wider conspiracy can be drawn" In re Iowa Ready-Mix Concrete, 786 F. Supp. 2d 975, 979 ( N.D. Iowa 2011) (involving bilateral agreements and geographically limited market), this case is it.  The ongoing investigation into price-fixing in automotive component parts has resulted in myriad guilty pleas that are not

limited to Toyota. DPPs allege factors that render the HCP market conducive to conspiratorial conduct, and, in fact, a conspiracy thrived in the HCP market. When read in its entirety, the allegations in DPPs' complaint articulate a plausible antitrust claim based upon the market structure, the government investigations, and the guilty pleas. Compare In re Air Cargo Shipping Servs. Antitrust Litig. No. MD 06-1775, 2009 WL 3443405 at *1 (E. D. N. Y. Aug. 21, 2009) (holding that admissions of price-fixing by so many defendants rendered a conspiracy claim plausible).

The cases relied upon by Defendants to support their position do not evidence a lack of substantial guidance. For example, in In re Hawaiian & Guamanian Cabotage Antitrust Litig., 647 F. Supp. 2d 1250, 1256 (W.D. Wash. 2009), the court made clear that antitrust allegations consisting of parallel conduct in a homogeneous market do not satisfy a plaintiff's pleading burden. In contrast, the conspiratorial, not parallel, conduct alleged here cannot be characterized as a naked assertion that if Toyota was involved other targets must have been involved. Compare In re Elevator, 502 F.3d 47, 52 (2d Cir. 2007) (observing that without a sufficient factual basis linking antitrust conduct in Europe to conduct in the United States, the court is left with nothing more than a conclusory suggestion allegation that "if it happened there it could have happened here"). The expansive government investigation, the number of guilty pleas involving numerous component parts, the length of time involved, and the overlap of manufacturers and defendants create an inference that price-fixing was commonplace in the automotive component parts market. DPPs' claim builds on an admitted conspiracy in one of those markets--the HCP market. DPPs do not rely on guilt by

association to "nudge" their claim from conceivable to plausible, Twombly, 127 S.Ct. at 1974), the allegations create "a reasonable expectation that discovery may reveal further evidence of an illegal agreement" involving other targets. Evidence of other conspiracies are relevant to how the background of current conspiracies. See In re Packaged Ice Antitrust Litig., 723 F. Supp. 2d 987, 1007-08 (E.D. Mich. 2010) (finding a nationwide conspiracy plausible even though the guilty pleas were limited to allocation of customers and territories in southeastern Michigan and Detroit).

Moreover, case law holding that civil actions are not limited by a defendant's plea are plentiful. See id. at 1011 (citing In re High Fructose Corn Syrup Antitrust Litig., 295 F.3d 664-665 (7th Cir. 2002) (refusing to infer lack of a civil conspiracy from the government's decision not to move against certain defendants, acknowledging that the DOJ may decide to limit the scope of an investigation for numerous reasons, including differing standards of proof in a criminal case and the knowledge that the private bar "had both the desire and the resources to prosecute [the] suit"); In re Vitamins Litig., No. 99-misc-197, 2000 WL 1475705 at *11 (D. D.C. May 9, 2000) (rejecting the "notion that the guilty pleas and cooperation agreements and the class settlement foreclose a broader conspiracy. Guilty pleas are negotiated instruments which take into account not only the culpability of the accused but the Justice Department's resources and other cases requiring the government's attention."); In re Polypropylene Carpet Antitrust Litig., 178 F.R.D. 603, 620 (N.D. Ga.1997) ("[T]he court is aware of no authority that requires a civil antitrust plaintiff to plead only the facts of a prior criminal indictment. To the contrary, several cases flatly reject that theory.").

In sum, the allegations advanced by DPPs nudged the claims that the conspiracy extended beyond the target identified in the guilty pleas from conceivable to plausible. Even in the absence of targets other than Toyota, the allegations are sufficient to establish that this is not an "exceptional" case appropriate for interlocutory review. Defendants are represented by astute counsel and it is reasonable to infer that the guilty pleas were negotiated with an eye toward strategy in the civil litigation that was certain to follow. In reviewing all of the allegations in this case, the more reasonable inference is that Defendants did not plead guilty to all of their illegal conduct. Accordingly, the Court finds that Defendants have failed to satisfy the second factor articulated in In re City of Memphis, 293 F.3d at 350, that the resolution of this issue is not substantially guided by previous decisions.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion is **DENIED**.

**IT IS SO ORDERED.**

Date: August 5, 2014        s/Marianne O. Battani
                            MARIANNE O. BATTANI
                            United States District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 5, 2014.

                            s/ Kay Doaks
                            Case Manager